© COPY

FILED

2008 NOV 12  AM 11: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY: ___

1  Christine Karol Roberts (State Bar No. 156528)
   LAW OFFICES OF
2  CHRISTINE KAROL ROBERTS
   E-Mail: ckroberts@aol.com
3  1109 West Twenty-First Street
   Floral Park, California 92706
4  Telephone:   714.479.0024
   Facsimile:    714.479.0025

5

6

7

8

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12

13  _____

14  Clay Smith Engineering, Inc.,          )    Case No.  **SACV08-01275 DOC (MLGx)**
                                           )
15                                         )    COMPLAINT FOR:
           Plaintiff,                      )    TRADEMARK INFRINGEMENT,
16                                         )    TRADEMARK COUNTERFEITING,
           vs.                             )    FEDERAL UNFAIR COMPETITION,
17                                         )    UNFAIR COMPETITION UNDER
    Zazzle.com, Inc.,                      )    CALIFORNIA LAW
18                                         )
           Defendant.                      )
19  _____

20

21

22      Plaintiff, Clay Smith Engineering, Inc. (hereinafter "CSEI" or "Plaintiff"), by and

23  through its attorney, the Law Offices of Christine Karol Roberts, as and for its Complaint

24  against the Defendant, Zazzle.com, Inc.  ("ZCI" or "Defendant") hereby alleges as

25  follows:

26

27

28

                                        -1-

**PARTIES AND JURISDICTION**

1.   Jurisdiction is founded on a federal question, within the meaning of 28 U.S.C. §§ 1331 and 1338, in that it is a suit for infringement and unfair competition under the provisions of the Lanham Trademark Act, 15 U.S.C. § 1121(a).  The Court's supplemental jurisdiction over the state law claims is invoked pursuant to 28 U.S.C. § 1367.

2.   Plaintiff, CSEI, is a California corporation with its principal place of business at 5870 Dale Street, Buena Park, California 90621.

3.   Plaintiff is reliably informed and on the basis of that information alleges that Defendant ZCI is a California corporation with its principal place of business at 1900 Seaport Blvd. - Fourth Floor,  Redwood City, California 94063.

4.   The Defendant,  by virtue of transacting business within California including, but not limited to, the offering for sale and sale of merchandise and apparel through its website Zazzle.com  to California residents throughout the State of California and within this judicial district, as well as contracting to supply goods in the State of California, has purposely availed itself of the privilege of doing business in the State of California and has committed tortious acts within the State of California, such that the exercise of personal jurisdiction is reasonable.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

**COMMON FACTUAL ALLEGATIONS**

5.   Plaintiff is a well-known manufacturer of custom camshafts that are used in internal combustion engines.  Plaintiff's camshafts have been installed in motorcycles, automobiles, dragsters, racing tractors, monster trucks, 3-wheel racers, and the like. Since as early as 1959, Plaintiff has been using a very distinctive trademark on its camshafts consisting of the stylized head of an angry woodpecker known as "MR.

1  HORSEPOWER."

2      6.      Plaintiff's product line under its "angry woodpecker head" MR.

3  HORSEPOWER trademark family of marks has now extended to a variety of

4  merchandise including, but not limited to, piston, spark plug and carburetor racks,

5  skateboards, novelty items, race wear, clothing, patches, stickers and decals.

6      7.      Plaintiff has a family of angry woodpecker head trademarks including those

7  known as MR. HORSEPOWER and HORSEPOWER WITH ATTITUDE.  Plaintiff has

8  been issued the following United States trademark registrations for MR. HORSEPOWER

9  and its angry woodpecker heads: 739, 694 - October 23, 1962; 921,891 - October 12,

10  1971; 1,768,442 - May 4, 1993; 1,771,411 - May 11, 1993; 1,771,552 - May 18, 1993;

11  and 2,484,714 - September 4, 2001.  Each of the foregoing registrations is in full force

12  and effect as of the filing of this complaint and are referred to collectively herein as the

13  "Marks." See attached Exhibit 1, the trademark registration for MR. HORSEPOWER

14  AND DESIGN, which is attached to and incorporated herein as if fully set forth at length.

15      8.      Plaintiff's merchandise has been shipped around the world and its MR.

16  HORSEPOWER "angry woodpecker head" trademark has become well-known,

17  particularly among motor racing enthusiasts including those who build, service and race

18  motor vehicles as well as those who attend motor racing shows and exhibitions.  These

19  individuals and entities have come to associate automotive related merchandise bearing

20  an "angry woodpecker head" as originating from Clay Smith Engineering, Inc. and from

21  no other source.  In addition, Plaintiff has sponsored a race vehicle, appeared at national

22  hot rod shows, and has advertised its products and distributed its catalogues throughout

23  the racing community and elsewhere throughout the United States and within this judicial

24  district, all of which events bearing its distinctive MR. HORSEPOWER "angry

25  woodpecker head" trademarks.  Plaintiff also maintains a website at

26  www.claysmithcams.com on which it offers its merchandise for sale.

27      9.      On information and belief, Defendant ZCI's primary business base is its

28  website, www.zazzle.com.

1       10.    On information and belief, in 1999, Robert Beaver and his two sons founded

2   Zazzle.com, a service which enables users of its website (hereinafter "Users") to upload

3   images and create their own products and store. Zazzle.com Users are able to create

4   and/or modify virtually any image on the Zazzle.com website, from customized t-shirts

5   to postage stamps according to ZCI's literature.

6       11.    On information and belief, ZCI is an online retailer that allows Users to

7   upload images and create their own merchandise including apparel and/or providing that

8   website visitors may purchase merchandise created by other Users which ZCI

9   manufactures on demand and furnishes to its Users and/or purchasers.

10       12.    On information and belief, Zazzle.com Users are permitted to open their

11   own shop at no cost and to set the profit they wish to make on each item which ZCI

12   manufactures for them on demand.

13       13.    On information and belief, Zazzle.com Users also receive a commission on

14   products that they sell and design themselves.

15       14.    On information and belief, ZCI's patented color print technology allows

16   them to manufacture multicolored items, especially t-shirts and other clothing items, for

17   pennies at a time.

18       15.    On information and belief, in addition to creating customized products for

19   themselves, Users of Zazzle.com can become contributors to the Zazzle.com website and

20   gallery by sharing their unique creations in the Zazzle.com galleries.

21       16.    On information and belief, Users can earn up to a 17% commission every

22   time someone purchases one of their designs.

23       17.    On information and belief, the images a User desires to sell on the

24   Zazzle.com website are licensed or original designs of the User uploading the image.

25       18.    On information and belief, ZCI has no procedure in place to determine

26   whether or not an uploaded image is the property of the User uploading the image or the

27   intellectual property of another third party.

28       19.    On information and belief, ZCI has never had, and does not now have, a

1  procedure in place to determine whether or not an image uploaded by a User is a licensed

2  design, an original design of the User, or an infringement of an unknown third party's

3  intellectual property rights.

4       20.    On information and belief, if a User uploads their own design on

5  Zazzle.com, they receive ten percent (10%) of future sales revenue on the item

6  manufactured on demand by ZCI .

7       21.    On information and belief, User/Designers can increase the royalty rate on

8  an uploaded image and Zazzle.com will adjust the item price accordingly.

9       22.    On information and belief, in 2006 Forbes reported that ZCI and/or its

10  website Zazzle.com  was generating $20 million in revenue with a gross margin of about

11  50%.  It was estimated that revenue will hit at least $80 million in 2008. Forbes applies a

12  4X multiple to arrive at a valuation of ZCI of approximately $250 million.

13       23.    On information and belief, in addition to offering to manufacture and sell the

14  User images, the Zazzle.com also permits a purchaser of an uploaded image to customize

15  and/or alter an image on its website which has been uploaded by its Users.

16       24.    In late Spring of 2008, it came to the attention of the Plaintiff that the

17  Defendant ZCI was selling a T-shirt on Zazzle.com uploaded by User NelsonT bearing an

18  image identical to Plaintiff's MR. HORSEPOWER "angry woodpecker head" and which

19  constitutes a counterfeit image, thereby infringing Plaintiff's registered MR.

20  HORSEPOWER "angry woodpecker head" trademark.

21       25.    On April 7, 2008, Plaintiff, via its undersigned counsel, Christine Karol

22  Roberts,  sent a letter to the Defendant ZCI, demanding that they immediately cease and

23  desist using Plaintiff's trademark, the "angry woodpecker head" design of MR.

24  HORSEPOWER and offering merchandise for sale depicting the User NelsonT's

25  uploaded images, which merchandise is manufactured by ZCI.

26       26.    To date, ZCI has not responded to the cease and desist letter and the

27  infringing image remains on the Zazzle.com website.  See Exhibit 2 which is attached

28  hereto and incorporated herein as if fully set forth at length.

27.    In late Spring of 2008, it came to the attention of the Plaintiff that the Defendant ZCI was selling a T-shirt on Zazzle.com designed by User ABG925 bearing a woodpecker image entitled Black Market Racing Establishment which is confusingly similar to Plaintiff's MR. HORSEPOWER "angry woodpecker head" thereby infringing Plaintiff's registered MR. HORSEPOWER "angry woodpecker head" trademark.

28.    On April 7, 2008, Plaintiff, via its undersigned counsel, Christine Karol Roberts,  sent a letter to the Defendant ZCI, demanding that they immediately cease and desist using Plaintiff's trademark, the "angry woodpecker head" design of MR. HORSEPOWER and offering merchandise for sale depicting the User ABG925's uploaded images, which merchandise is manufactured by ZCI.

29.    To date, ZCI has not responded to the cease and desist.  See Exhibit 3 which is attached hereto and incorporated herein as if fully set forth at length.

30.    In late Spring of 2008, it came to the attention of the Plaintiff that the Defendant ZCI was selling a T-shirt on Zazzle.com designed by User Rusik1987 bearing an image identical to Plaintiff's MR. HORSEPOWER "angry woodpecker head" and which constitutes a counterfeit image, thereby infringing Plaintiff's registered MR. HORSEPOWER "angry woodpecker head" trademark.

31.    On April 11, 2008, Plaintiff, via its undersigned counsel, Christine Karol Roberts,  sent a letter to the Defendant ZCI, demanding that they immediately cease and desist using Plaintiff's trademark, the "angry woodpecker head" design of MR. HORSEPOWER and offering merchandise for sale depicting the User Rusik1987's uploaded images, which merchandise is manufactured by ZCI.

32.    To date, ZCI has not responded to the cease and desist and the infringing image remains on the Zazzle.com website.  See Exhibit 4 which is attached hereto and incorporated herein as if fully set forth at length.

33.    In late Spring of 2008, it came to the attention of the Plaintiff that the Defendant ZCI was selling a T-shirt on Zazzle.com uploaded by User SteveO bearing an image substantially identical and confusingly similar to Plaintiff's MR. HORSEPOWER

1   "angry woodpecker head" thereby infringing Plaintiff's registered MR. HORSEPOWER

2   "angry woodpecker head" trademark.

3       34.   On April 11, 2008, Plaintiff, via its undersigned counsel, Christine Karol

4   Roberts,  sent a letter to the Defendant ZCI, demanding that they immediately cease and

5   desist using Plaintiff's trademark, the "angry woodpecker head" design of MR.

6   HORSEPOWER and offering merchandise for sale depicting the User SteveO's

7   uploaded images, which merchandise is manufactured by ZCI.

8       35.   To date, ZCI has not responded to the cease and desist and the infringing

9   image remains on the Zazzle.com website.  See Exhibit 5 which is attached hereto and

10   incorporated herein as if fully set forth at length.

11       36.   To date, the Defendant has not discontinued the manufacture and/or  sale of

12   the infringing merchandise prominently bearing the Plaintiff's registered woodpecker

13   head logo.

14       37.   Notwithstanding CSEI's well-known, prior and exclusive statutory and

15   common law rights to use of its MR. HORSEPOWER "angry woodpecker head" design,

16   ZCI used and continues to use the CSEI marks and offering merchandise for sale

17   depicting the infringing  uploaded images on merchandise which is manufactured by ZCI

18   including, but not limited to t-shirts and other apparel (the "counterfeit and infringing

19   merchandise").

20       38.   The counterfeit and infringing merchandise are not CSEI's products, and

21   ZCI does not have sponsorship, consent, approval, or certification of CSEI.

22       39.   ZCI has no association or affiliation whatever with CSEI, nor does it have

23   the consent of CSEI to use the trademark MR. HORSEPOWER "angry woodpecker

24   head" design.

25       40.   The counterfeit and infringing images and merchandise offered for sale

26   and/or sold by ZCI are of the same general appearance and nature as CSEI's merchandise

27   bearing its registered trademarks, but are of inferior materials and quality compared to

28   CSEI's merchandise bearing its registered trademarks.

41.     CSEI's merchandise and ZCI's merchandise are marketed through the same channels of trade and to the same consumers.

42.     ZCI's use of the Plaintiff's MR. HORSEPOWER trademark falsely creates the impression that ZCI's merchandise is manufactured by or affiliated with CSEI, and constitutes trademark counterfeiting, trademark infringement and unfair competition.

43.     ZCI's trademark counterfeiting, infringement and unfair competition demonstrate intentional, willful and bad faith attempts to deceive or to create mistake or confusion in the minds of CSEI's customers and potential customers and of the public, to trade on CSEI's goodwill, to palm off ZCI's goods as those of CSEI, and to create the false impression of a connection, affiliation, association, sponsorship, or approval of or between CSEI and ZCI, all causing irreparable injury to CSEI.

44.     CSEI has no adequate remedy at law.

45.     ZCI has been unjustly enriched by its infringing and unfair activities and CSEI is entitled to an accounting for all of ZCI's profits derived from the infringing sales.

46.     By reason of ZCI's activities, CSEI has suffered substantial actual damages for injury to its goodwill and reputation, dilution of the distinctive quality of its trademarks and injury to its relationship with customers.

47.     Because of ZCI's bad faith and intentional and willful counterfeiting, infringement, unfair competition, and deceptive trade practices, CSEI is entitled to recover punitive damages to deter ZCI from repeating its unlawful activities, as well as CSEI's attorney's fees and costs of this action.

## COUNT I

## TRADEMARK INFRINGEMENT—FEDERAL LAW

48.     The allegations of ¶¶ 1-47 are incorporated as if repeated verbatim.

49.     On April 15, 1992, Plaintiff applied for registration of the trademark MR. HORSEPOWER AND DESIGN in the United States Patent and Trademark Office for

1   use in association with camshafts and, on May 4, 1993, Plaintiff was granted Registration

2   No. 1,768,442 in International Classes 7 and 12 for the trademark.  This registration is

3   valid, subsisting, and uncanceled.  A copy of the trademark search result reflecting the

4   registration is attached hereto, marked Exhibit 6, and by this reference is made a part

5   hereof.

6        50.   On August 7, 1992, Plaintiff applied for registration of the trademark MR.

7   HORSEPOWER AND DESIGN in the United States Patent and Trademark Office for

8   use in association with decals and, on May 18, 1993, Plaintiff was granted Registration

9   No. 1,771,411 in International Class 16 for the trademark.  This registration is valid,

10  subsisting, and uncanceled.  A copy of the trademark search result reflecting the

11  registration is attached hereto, marked Exhibit 7, and by this reference is made a part

12  hereof.

13       51.   On August 7, 1992, Plaintiff applied for registration of the trademark MR.

14  HORSEPOWER AND DESIGN in the United States Patent and Trademark Office for

15  use in association with clothing, namely t-shirts, sweatshirts, jackets and hats, on May 18,

16  1993, Plaintiff was granted Registration No. 1,771,552 in International Class 25 for the

17  trademark.  This registration is valid, subsisting, and uncanceled.  A copy of the

18  trademark search result reflecting the registration is attached hereto, marked Exhibit 8,

19  and by this reference is made a part hereof.

20       52.   As set forth above, on information and belief, long after the adoption and

21  widespread use of the Marks by Plaintiff, and long after the mark MR. HORSEPOWER

22  AND DESIGN had been registered in the United States Patent and Trademark Office,

23  Defendant has infringed and continues to  infringe Plaintiff's registered trademarks. See

24  Exhibits 2-5 referred to above in this Complaint which embody true and accurate

25  downloaded copies of the webpages of ZCI's website Zazzle.com depicting the offer for

26  sale of designs uploaded by ZCI Users NelsonT, ABG925, Rusik1987 and SteveO.

27       53.   Plaintiff has enjoyed considerable success over the years and has achieved a

28  large volume of business under the Marks.

54.   Plaintiff has expended large sums of money in advertising and otherwise promoting the sale of its various products and has prominently featured the Marks in its sales activities.

55.   Plaintiff's products, sold under the Marks, are of high quality and, as a consequence, are well and favorably known to the trade and public as being of the best quality and entitled to full confidence. Plaintiff's trademark is a primary means by which the products are identified as having been produced and sold by Plaintiff.

56.   Plaintiff has built up and now has valuable goodwill connected with its business, and this goodwill is symbolized by Plaintiff's trademarks, among which are the Marks.

57.   In accordance with the provisions of 15 U.S.C. § 1111, Plaintiff's trademark, as displayed on Plaintiff's products, is accompanied by the letter R enclosed within a circle to provide notice that the trademark has been registered.

58.   Plaintiff is reliably informed and believes, and based on such information and belief alleges, that the Defendant, without Plaintiff's consent or approval and after the Defendant had received actual notice of Plaintiff's prior registration of its Marks, nonetheless used the mark MR. HORSEPOWER AND DESIGN, a counterfeit mark or confusingly similar variants thereof, which use was, and is, wilful and deliberate; the use by the Defendant of Plaintiff's trademarks was for the purpose of giving the Defendant's products consumer appeal and salability, by usurping Plaintiff's own reputation and goodwill, which the products of those putative licensees otherwise would not have.

59.   The use by the Defendant of the above-mentioned design and trademarks on merchandise and products manufactured, imported  and/or sold by the Defendant is likely to deceive purchasers as to the source of the Defendant's goods, in that the trade and the public are likely to believe that the goods sold by the Defendant originate with Plaintiff or with a business that has a legitimate connection with Plaintiff.

60.   The use of the Marks by the Defendant constitutes infringement of Plaintiff's trademarks, within the meaning of § 43(a) of the Lanham Trademark Act, 15 U.S.C. §